1

2

3

4

5

6                    UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF WASHINGTON
7                              AT TACOMA

8   VERNON B. LEROY, JR.,

9                            Plaintiff,          CASE NO. 3:16-CV-05301-BHS-DWC

10             v.
                                                 REPORT AND RECOMMENDATION
11   CAROLYN W. COLVIN, Acting                   REVERSING AND REMANDING
    Commissioner of Social Security,             DEFENDANT'S DECISION TO DENY
12                                               BENEFITS
                             Defendant.
13                                               Noting Date: October 21, 2016

14          The District Court has referred this action, filed pursuant to 42 U.S.C. § 405(g), to United

15   States Magistrate Judge David W. Christel. Plaintiff filed this matter seeking judicial review of

16   Defendant's denial of his applications for disability insurance benefits ("DIB").

17          After reviewing the record, the Court concludes the Administrative Law Judge ("ALJ")

18   erred in evaluating the medical opinion of Dr. Paul Helgason by failing to provide a specific and

19   legitimate reason supported by substantial evidence for giving little weight to Dr. Helgason's

20   opined limitations. Had the ALJ properly considered the medical evidence, the residual

21   functional capacity may have included additional limitations. The ALJ's error is therefore

22   harmful. Accordingly, this matter should be reversed and remanded pursuant to sentence four of

23

24   REPORT AND RECOMMENDATION
    REVERSING AND REMANDING
    DEFENDANT'S DECISION TO DENY
    BENEFITS - 1

1  42 U.S.C. § 405(g) to the Acting Commissioner of Social Security ("Commissioner") for further

2  proceedings consistent with this Report and Recommendation.

3  <u>FACTUAL AND PROCEDURAL HISTORY</u>

4  On August 27, 2012, Plaintiff filed applications for DIB and supplemental security

5  income ("SSI"), alleging disability as of January 20, 2011. *See* Dkt. 10, Administrative Record

6  ("AR") 19. The applications were denied upon initial administrative review. *See* AR 19. Upon

7  reconsideration, Plaintiff's SSI claim was granted, finding disability as of August 27, 2012, but

8  his DIB claim was denied, finding Plaintiff was not disabled on or before March 31, 2012—the

9  date Plaintiff was last insured. AR 19. A hearing was held before Administrative Law Judge

10 ("ALJ") Sue Leise regarding the denial of Plaintiff's DIB claim. AR 19. In a decision dated

11 October 31, 2014, the ALJ determined Plaintiff to be not disabled beginning January 20, 2011

12 through March 31, 2012. *See* AR 19-28. Plaintiff's request for review of the ALJ's decision was

13 denied by the Appeals Council, making the ALJ's decision the final decision of the

14 Commissioner. *See* AR 1; 20 C.F.R. § 404.981, § 416.1481.

15 Plaintiff maintains the ALJ erred by: (1) finding Plaintiff does not meet a Listing for

16 disorders of the spine; (2) erring in her assessment of the medical opinion evidence;

17 (3) discounting Plaintiff's subjective complaint and testimony; (4) improperly weighing the lay

18 witness statement of Plaintiff's wife; and (5) based upon the foregoing assignments of error,

19 improperly formulating Plaintiff's residual functional capacity ("RFC").

20 <u>STANDARD OF REVIEW</u>

21 Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

22 social security benefits if the ALJ's findings are based on legal error or not supported by

23

24

REPORT AND RECOMMENDATION
REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY
BENEFITS - 2

1  substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

2  Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

3  <u>DISCUSSION</u>

4  **I.     Whether the ALJ Properly Evaluated the Medical Evidence.**

5  Plaintiff asserts the ALJ erred by improperly evaluating the medical evidence. Dkt. 12,

6  pp. 9-12. Specifically, Plaintiff avers the ALJ improperly rejected the medical opinion of Paul

7  Helgason, M.D., while improperly giving great weight to the medical opinions of non-examining

8  doctors, including Robert Handler, M.D., Christmas Covell, Ph.D., and James Bailey, Ph.D. *See*

9  *id.*

10  The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

11  opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

12  1996) (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d

13  502, 506 (9th Cir. 1990)). When a treating or examining physician's opinion is contradicted, the

14  opinion can be rejected "for specific and legitimate reasons that are supported by substantial

15  evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035,

16  1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can

17  accomplish this by "setting out a detailed and thorough summary of the facts and conflicting

18  clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157

19  F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

20  A.  <u>Paul Helgason, M.D.</u>

21  Plaintiff challenges the ALJ's treatment of Dr. Helgason's opinion. Dkt. 12, pp. 11-12.

22  Early in the morning on January 5, 2011, Plaintiff was in a car accident and suffered a "neck

23  injury … [with] bruising all over" and had to wear a neck brace. AR 3257. Although Plaintiff

24

initially "did not seek care because he was worried about the bills," Plaintiff went to the VA later that morning and was transferred to the trauma unit at Oregon Health & Science University ("OSHU"). *See* AR 3257-66, 3269. Plaintiff was discharged and was off work until January 10, 2011, when he called Dr. Helgason's office and requested a release for work. AR 3257. Dr. Helgason examined Plaintiff on January 12, 2011—the earliest appointment Plaintiff could get— for Plaintiff to obtain a release to work. AR 3256-57. At the appointment, Plaintiff rated his pain as a 7 and noted he had pain in his neck and shoulders. AR 3256. Dr. Helgason wrote a letter requesting Plaintiff be excused from work from January 5, 2011—the date of the accident— through the date of the appointment. AR 3255. Dr. Helgason noted Plaintiff "is released to full time work and may assume full duties starting 1-13-2011." AR 3255. In December 2011, Dr. Helgason treated Plaintiff again for an annual checkup and medication renewal and to have his "pain/comfort issues addressed at this visit." AR 3239-40. Dr. Helgason observed Plaintiff was not performing daily stretching or applying heat to his neck but was "still deriving benefit with same dose [of] vicodin and cyclobenzaprine". AR 3235. Plaintiff rated his neck and shoulder pain as a 7. AR 3240.

In April 2013, Dr. Helgason completed a Medical Source Statement. *See* AR 442-44. He noted he had treated Plaintiff since January 2008 and opined his prognosis is "[f]air, no significant improvement expected." AR 442. Dr. Helgason also opined Plaintiff's primary physical symptoms include neck pain, shoulder pain, arm pain, headaches. AR 442. He rated Plaintiff's pain from 8-9 on a 10 point scale, noted Plaintiff could not sit, stand, or walk more than 0-2 hours in an eight-hour workday, and opined Plaintiff can rarely lift less than 10 pounds and can never lift greater than 10 pounds. AR 442. Dr. Helgason also observed Plaintiff has a

number of additional limitations related to his physical impairments, including no stooping,

pushing, kneeling, bending, and pulling. AR 442-43.

As to mental impairments, Dr. Helgason opined Plaintiff has psychological limitations

related to his ability to work. AR 443. He diagnosed Plaintiff with depression, anxiety and

insomnia. AR 442. He also observed emotional factors impact Plaintiff's ability to work and

opined Plaintiff is not a malingerer, is incapable of low stress, and "[e]xperiences significant

anxiety with mild stress." AR 444.

The ALJ afforded little weight to Dr. Helgason's opinion "because [1] it conflicts

dramatically with Dr. Helgason's own treatment notes and [2] his letter from January 2011

releasing the claimant to work." AR 26 (numbering added). The ALJ afforded great weight to the

January 2011 letter, noting the letter "is consistent with [Dr.] Helgason's examination findings

from January 2011 that show the claimant had normal range of motion of the neck with no pain

complaints on exam." AR 26. Plaintiff argues the ALJ erred in assessing Dr. Helgason's opinion

because the ALJ (1) improperly relied upon the January 2011 work release letter to find Plaintiff

capable of medium exertion during the relevant period and (2) improperly ignored Dr.

Helgason's findings regarding Plaintiff's mental impairments. *See* Dkt. 12, pp. 11-12. The

undersigned agrees.

i.   *Mental Impairments*

As an initial matter, the ALJ "may not reject 'significant probative evidence' without

explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (quoting *Vincent*, 739 F.2d

at 1395). The "ALJ's written decision must state reasons for disregarding [such] evidence."

*Flores*, 49 F.3d at 571. In her decision, the ALJ did not discuss Dr. Helgason's opinions

regarding Plaintiff's mental functional limitations. *See* AR 25-26. Dr. Helgason opined Plaintiff

REPORT AND RECOMMENDATION
REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY
BENEFITS - 5

1    was limited in his ability to work because of psychological and emotional factors. AR 442-43.

2    He diagnosed Plaintiff with depression, anxiety and insomnia, and opined Plaintiff is not a

3    malinger, is incapable of low stress, and "[e]xperiences significant anxiety with mild stress." AR

4    442-44. Without an adequate explanation, the Court cannot determine if the ALJ properly

5    considered all the mental limitations included in Dr. Helgason's opinion or simply ignored the

6    evidence. *See id.*; *see also Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) (noting that by

7    selectively scouring a doctor's records "to locate a single treatment note that purportedly

8    undermines her overall assessment of [the claimant's] functional limitations, the ALJ

9    demonstrated a fundamental, but regrettably all-too-common, misunderstanding of mental

10   illness") (collecting cases) (citations omitted). Accordingly, the ALJ erred in her treatment of Dr.

11   Helgason's medical opinion. *See Flores*, 49 F.3d at 571 (an "ALJ's written decision must state

12   reasons for disregarding significant, probative evidence"). As discussed below, the ALJ's failure

13   to discuss significant probative evidence is not harmless, and the undersigned recommends this

14   matter be reversed and remanded for further consideration of the medical opinion evidence.

15              ii.    *Physical Impairments*

16         The Court also finds the ALJ erred in dismissing Dr. Helgason's opinion regarding

17   plaintiff's physical impairments.

18         First, the ALJ afforded little weight to Dr. Helgason's opinion because "it conflicts

19   dramatically with Dr. Helgason's own treatment notes." AR 26. A medical opinion can be

20   rejected "for specific and legitimate reasons that are supported by substantial evidence in the

21   record." *Lester*, 81 F.3d at 830-31 (citation omitted). Here, however, the ALJ did not cite to any

22   evidence in the record inconsistent with Helgason's opinion during the relevant period of

23   disability. *See* AR 26. Thus, the ALJ's conclusory statement lacks the specificity required by the

24

Court, and is insufficient to reject Dr. Helgason's opinion regarding Plaintiff's functional

limitations. *See Embrey*, 849 F.2d at 421-22; *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir.

1989) (the ALJ's rejection of a physician's opinion on the ground that it was contrary to clinical

findings in the record was "broad and vague, failing to specify why the ALJ felt the treating

physician's opinion was flawed").

Second, the ALJ afforded little weight to Dr. Helgason's April 2013 opinion because "it

conflicts dramatically with … his letter from January 2011 releasing the claimant to work",

which the ALJ afforded great weight. AR 26. Although conflicts in the medical evidence could

be a specific and legitimate reason to reject a doctor's opinion, in this case the Court cannot

determine if the ALJ's reasoning is supported by substantial evidence without a more detailed

explanation. *See Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). Here, although Dr.

Helgason released Plaintiff to work after his car accident in January 2011, per Plaintiff's request,

Plaintiff stopped working approximately two weeks later. *See* AR 3254-57, 50, 56-57, 487.

Plaintiff testified he requested a release to work because he was afraid of losing his job. AR 50,

56. Plaintiff also testified he did not report his severe pain to Dr. Helgason because he was afraid

Dr. Helgason would not release him to work. *See* AR 56-57. The fact that a plaintiff attempted to

work, in spite of his impairments, does not necessarily mean that the plaintiff's allegations of

disabling pain—or the doctor's opinion regarding plaintiff's disabling pain—are inaccurate or

incorrect. *See, e.g.*, *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007). Indeed, the

Ninth Circuit has "suggested that similar evidence that a claimant tried to work and failed

actually *supported* his allegations of disabling pain." *Id.*(emphasis in original).

In addition, when considering the entire relevant period of disability between January 20,

2011 (the alleged onset date) and March 31, 2012 (the date last insured), the evidence of record

1    shows Plaintiff did not have normal range of motion or lack of pain during this time. For

2    example, although Dr. Helgason's chart notes showed Plaintiff's neck range of motion was

3    normal and Plaintiff was not in significant pain upon examination, the chart notes also show

4    Plaintiff reported neck pain of a "7" at the same visit. *See* AR 3254-56. Plaintiff did not have

5    normal range of motion in his neck in December 2011. *See* AR 728. And, in January 2012,

6    Plaintiff had a colonoscopy and reported he was in acute neck pain, rated at an 8, but controlled

7    by Vicodin. AR 3230. The ALJ did not discuss evidence of Plaintiff's ongoing neck pain and

8    negative exam finding during the relevant period, nor did the ALJ discuss Plaintiff's proffered

9    reasons for attempting to go back to work despite pain due to his car accident. *See* AR 25-26.

10   Courts require "the ALJ to build an accurate and logical bridge from the evidence to her

11   conclusions so that we may afford the claimant meaningful review of the SSA's ultimate

12   findings." *Blakes*, 331 F.3d at 569. Without discussion of the additional probative evidence

13   supporting Plaintiff's allegations of disability during the relevant period, the Court cannot

14   determine if the ALJ improperly "cherry-picked" aspects of the record to support the ALJ's

15   decision, while failing to develop the record on aspects of the record supporting a finding of

16   disabling limitations. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) ("the ALJ

17   improperly cherry-picked some of [the doctor's] characterizations of [the claimant's] rapport and

18   demeanor instead of considering these factors in the context of [the doctor's] diagnoses and

19   observations of impairment") (citations omitted).

20         Finally, the ALJ also noted Dr. Helgason's medical opinion "related to the time period

21   beginning in approximately 2008." AR 26. On the questionnaire he completed, Dr. Helgason

22   noted "the earliest date that the description of symptoms and limitations" applied was

23   "approximately 2008." *See* AR 444. To the extent the ALJ is suggesting the 2008 date is

24

REPORT AND RECOMMENDATION
REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY
BENEFITS - 8

1   inconsistent with Dr. Helgason's 2011 letter releasing plaintiff to work, the Court finds the

2   record before it ambiguous. The question Dr. Helgason answered relates to both symptoms and

3   limitations, and the questionnaire is unclear which symptoms and or limitations Dr. Helgason

4   determined started in 2008. *See id.* As this matter is already remanded based upon the ALJ's

5   treatment of Dr. Helgason's opinion regarding Plaintiff's mental and physical impairments, the

6   ALJ shall further develop the record, if necessary, to ensure Plaintiff's interests are considered.

7   *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149-50 (9th Cir. 2001) (noting the duty to develop

8   the record is triggered when there is "[a]mbiguous evidence" or on "the ALJ's own finding that

9   the record is inadequate to allow for proper evaluation of the evidence").

10              iii.   *Harmless Error*

11          "[H]armless error principles apply in the Social Security context." *Molina v. Astrue*, 674

12   F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial to the

13   claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v.*

14   *Comm'r, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at

15   1115. The determination as to whether an error is harmless requires a "case-specific application

16   of judgment" by the reviewing court, based on an examination of the record made "'without

17   regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-

18   1119 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

19          Had the ALJ more fully developed the record as to Dr. Helgason's opined limitations

20   regarding Plaintiff's mental and physical impairments and resulting functional limitations, she

21   may have included additional limitations in the RFC and in the hypothetical questions posed to

22   the vocational expert. AR 26, 61-73. For example, here, the ALJ did not include any limitations

23   related to Plaintiff's mental limitations, and she may have included limitations related to

24

REPORT AND RECOMMENDATION
REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY
BENEFITS - 9

1    Plaintiff's ability to manage stress had she fully considered Dr. Helgason's opinion. As to

2    physical limitations, the ALJ may have found Plaintiff could not carry more than 10 pounds or

3    sit or stand for longer than two hours in an eight-hour workday. As the ultimate disability

4    determination may have changed, the ALJ's error is not harmless and requires reversal. *Molina*,

5    674 F.3d at 1115.

6            B.   Robert Handler, M.D., Christmas Covell, Ph.D. and James Bailey, Ph.D.

7            Plaintiff also challenges the ALJ's reliance on non-examining State agency consultants

8    Robert Handler, M.D., Christmas Covell, Ph.D., and James Bailey, Ph.D. *See* Dkt. 12, pp. 9-12.

9    The ALJ gave all three doctors' opinions "great weight" finding the doctors' opinions were

10   consistent with the records during the relevant period. *See* AR 25. Dr. Handler's, Dr. Covell's,

11   and Dr. Bailey's opinions also appears to have relied, in part, on Dr. Helgason's treatment notes

12   from the relevant time period. AR 82-85, 100-08. Regardless, because the Court has already

13   found the ALJ erred in evaluating Plaintiff's treating physician Dr. Helgason's opinion, the ALJ

14   should reevaluate the medical opinion evidence, including the opinions of Drs. Handler, Covell,

15   and Bailey, upon remand. *See* 20 C.F.R. §§ 404.1527, 416.927.

16   **II.    Whether the ALJ Properly Determined Plaintiff Does Not Meet a Listing.**

17           A.   Whether Plaintiff Meets a Listing.

18           Plaintiff asks the Court to determine Plaintiff is disabled at Step Three, finding he meets

19   Listing 1.04(A) for disorders of the spine. Dkt. 12, pp. 5-7; *see* 20 C.F.R. pt. 404, subpt. P, app. 1

20   § 1.04. At Step Three, the ALJ considers whether one or more of the claimant's impairments

21   meets or equals an impairment listed in Appendix 1 to Subpart P of the regulations. 20 C.F.R.

22   § 404.1520(a)(4)(iii).  Each listing sets forth the "symptoms, signs, and laboratory findings"

23   which must be established for a claimant's impairment to meet the listing. *Tackett v. Apfel*, 180

24

REPORT AND RECOMMENDATION
REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY
BENEFITS - 10

1  F.3d 1094, 1099 (9th Cir. 1999). If a claimant meets or equals a listing, the claimant is

2  considered disabled without further inquiry. *See* 20 C.F.R. § 416.920(d).

3       Here, the ALJ determined Plaintiff's "degenerative disc disease did not meet or equal the

4  Listing found at 1.04" finding "there is no evidence of nerve root compression, spinal

5  arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication preventing the claimant

6  from being able to ambulate effectively." AR 22. "An ALJ must evaluate the relevant evidence

7  before concluding that a claimant's impairments do not meet or equal a listed impairment. A

8  boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not

9  do so." *Lewis,* 236 F.3d at 512 (citing *Marcia v. Sullivan,* 900 F.2d 172, 176 (9th Cir.1990)).

10  Here, since the ALJ simply reiterated the language in the Listing without analysis, the Court

11  considers the ALJ's conclusion as a "boilerplate finding." Nevertheless, as the Court has already

12  instructed the ALJ to reconsider the medical opinion evidence, the ALJ shall also reconsider

13  whether Plaintiff met a Listing at Step Three.

14       B.  <u>Whether the Court Should Remand for Benefits.</u>

15       Plaintiff also asks this Court to find Plaintiff meets a Listing and remand for benefits. *See*

16  Dkt. 12, pp. 5-7. The Court may remand this case "either for additional evidence and findings or

17  to award benefits." *Smolen*, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's

18  decision, "the proper course, except in rare circumstances, is to remand to the agency for

19  additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)

20  (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the

21  claimant is unable to perform gainful employment in the national economy," that "remand for an

22  immediate award of benefits is appropriate." *Id.*

23

24

REPORT AND RECOMMENDATION
REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY
BENEFITS - 11

1    Benefits may be awarded where "the record has been fully developed" and "further

2    administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan v.*

3    *Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Because issues still remain in regard to the

4    medical opinion evidence in the record, remand for further consideration of these issues is

5    warranted.

6    **III.   Whether the ALJ Properly Evaluated Plaintiff's Credibility, the Lay Witness**
         **Statements, and the VA Disability Determination.**

7

8    Finally, Plaintiff argues the ALJ improperly evaluated his credibility, the lay witness

9    statement of his wife, Teresa LeRoy, and the VA disability determination thereby resulting in an

10   incomplete and inaccurate RFC. *See* Dkt. 12, pp. 7-9, 12-14. In light of the fact this matter is

11   remanded based upon the ALJ's treatment of the medical opinion evidence, Plaintiff's testimony

12   and the lay witness testimony will necessarily have to be reconsidered anew. Moreover, as

13   discussed in Section I, *supra*, had the ALJ properly weighed the medical evidence, the RFC and

14   hypothetical questions posed to the vocational expert may have included additional limitations.

15   *See* AR 26, 61-72. As a result, the ALJ erred in evaluating Plaintiff's RFC and consequently her

16   Step Five findings were erroneous. Thus, it is unnecessary to address the other issues raised in

17   Plaintiff's appeal. On remand, the ALJ shall re-evaluate the Sequential Steps.

18                                    <u>CONCLUSION</u>

19   Based on the above stated reasons, the undersigned recommends this matter be reversed

20   and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for

21   further proceedings consistent with this Report and Recommendation. The undersigned also

22   recommends judgment be entered for Plaintiff and the case be closed.

23   Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

24   fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on October 21, 2016, as noted in the caption.

Dated this 5th day of October, 2016.

David W. Christel
United States Magistrate Judge

REPORT AND RECOMMENDATION
REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY
BENEFITS - 13